# UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 1:23-cv-23459**

SEAN SULLIVAN and
OCEANFRONT PROPERTIES, LLC,

      Plaintiffs,

vs.

MARBLE HILL, LTD,
THE GOVERNMENT OF ARGENTINA, and
SERFATY LAW, PA,

      Defendants.

_____/

## **COMPLAINT FOR DECLARATORY RELIEF**

The Plaintiffs, SEAN SULLIVAN, and OCEANFRONT PROPERTIES, LTD, by and through their undersigned counsel hereby files their Complaint for Declaratory Relief against the Defendants, MARBLE HILL, LTD, THE GOVERNMENT OF ARGENTINA, and SERFATY LAW, PA, and in support thereof states as follows:

### **Jurisdiction and Venue**

1. The Plaintiff is hereby bringing suit for declaratory relief in amounts in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

2. This court has jurisdiction over this matter against The Government of Argentina, pursuant to 28 U.S.C. 1330 as this action is brought pursuant to the Foreign Sovereign Immunities Act of 1976 ("FSIA").

3. This court has venue over this matter pursuant to 28 U.S.C. 1391(f)(1) as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

4. Moreover, this court has venue over this matter pursuant to 28 U.S.C. 1391(f)(1), as a substantial part of the property that is the subject of the action is situated in this judicial district.

5. The Defendant, THE GOVERNMENT OF ARGENTINA, falls under a general exception to the jurisdictional immunity of a foreign state under 28 U.S.C. § 1605(a)(2) because this action is based upon an act performed in the United States in connection with a commercial activity, which the foreign state has made a potential claim to monies being held in the United States.

6. SULLIVAN resides in Florida, OCEANFRONT PROPERITIES is a Florida Company, and SERFATY LAW, is a Florida Law Firm, and the subject money at issue is all located in the State of Florida.

7. THE GOVERNMENT OF ARGENTINA falls under a general exception to the jurisdictional immunity of a foreign state under 28 U.S.C. § 1605(a)(3). Wherein the Plaintiffs have rights in property taken in violation of international law and that property or any property exchanged for such property is present within the United States in connection with a commercial activity in the United States by the foreign state or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States.

8. "[I]n order to establish jurisdiction pursuant to the FSIA expropriation exception, a plaintiff must show that: (1) rights in property are in issue; (2) that the property was 'taken'; (3) that the taking was in violation of international law; and (4) that one of the two nexus requirements is satisfied," *Rukoro v. F.R.G.*, 976 F.3d 218, 224 (2d Cir. 2020) (citing to *Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 251 (2d Cir. 2000)). As to the nexus

requirement, a plaintiff must show either that "such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state," or "such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity." *Id. Rukoro v. F.R.G.*, 976 F.3d 218, 224 (2d Cir. 2020).

9. The Plaintiffs are bringing this claim because their rights in property are at issue, and their property is being "taken" in violation of international law because of the repeated claims made by THE GOVERNMENT OF ARGENTINA to monies, in the amount of $1,500,000, which are currently held in the United States by a United States Law Firm, SERFATY LAW.

10. As a result, the money is now being held indefinitely by a SERFATY LAW, in Trust, because of claims previously made to the money by the GOVERNMENT OF ARGENTINA.

11. Therefore, there has been a taking, under the law, as the Plaintiffs have had a seizure of private property or a substantial deprivation to their free use or enjoyment of their monies, in the amount of $1,500,000, which was caused by government action by THE GOVERNMENT OF ARGENTINA.

12. The Plaintiff has satisfied the requirements to bring this case to federal court.

## The Parties

13. The Plaintiff, SEAN SULLIVAN, is an individual who is *sui juris*, and resides in Palm Beach County, Florida.

14. The Plaintiff, OCEANFRONT PROPERTIES, LTD. (hereinafter referred to as "OCEANFRONT"), is a Turks and Caicos International Business Corporation, and SULLIVAN

is its owner and sole director, and authorized to bring the claim on behalf of OCEANFRONT.

15. The Defendant, MARBLE HILL, LTD (hereinafter referred to as "MARBLE HILL"), is a Turks and Caicos International Business Corporation.

16. The Defendant, THE GOVERNMENT OF ARGENTINA (hereinafter referred to "ARGENTINA"), is the governing body for a country located in South America having the right to self-government. As such, ARGENTINA is subject to Section 1603(a) of the Foreign Sovereign Immunities Act of 1976 (28 U.S.C. 1603(a)).

17. The Defendant, SERFATY LAW, PA (hereinafter referred to as "SERFATY"), is a professional association entity formed under the laws of the state of Florida and based in the United States.

## Factual Allegations

18. In 2017, SULLIVAN, by and through his company, Oceanfront Properties LTD, received a loan from a company called MARBLE HILL. The entire transaction occurred in Miami-Dade County, Florida, with the contracts executed and the money received in Miami-Dade County, Florida. The entire transaction was arms-length, and SULLIVAN and his company, OCEANFRONT, both provided collateral in the form of property, which was located in Turks and Caicos, in order to secure the loan proceeds.

19. The loan was made in the amount of USD $29,300,000 (twenty-nine million US dollars) (the "Marble Hill Funds"), and the purpose of the loan was for the monies to be used by SULLIVAN to build a Six Senses Resort in Turks and Caicos ("TCI").

20. In 2007 and 2008, SULLIVAN by and through another of his companies, The River TCI Limited (the "River"), purchased for millions of dollars forty acres of property in TCI, and

the Sullivan, any his county, the River, is now the owner of prime, beachfront property, in TCI, which was acquired through purchases of land from local TCI owners of property.

21. The loan proceeds were used to hire US consultants to put the plans together to develop the property in TCI. Those consultants included, but are not limited to, the following:

(a) EDSA, a landscape architectural firm and master planning company, located in Fort Lauderdale, Florida.

(b) SB Architects is an architectural firm located in Miami, Florida.

(c) Applied Technology Management, a coastal engineering company, located in Charleston, South Carolina.

(d) Alderock, a real estate consulting company, located in California.

(e) WSP, a sustainability engineering company, located in Toronto, Canada.

(f) The Agency, a real estate brokerage company located in Beverly Hills, California

22. The MARBLE HILL loan was a one-year loan, which was executed in December 2016, and due to be paid by December 2017. This loan was to be repaid by financing arranged by Avison Young, the largest hospitality finance company in the world.

23. In February 2018 SULLIVAN sent MARBLE HILLS' law firm, SERFATY LAW monies in the amount of $1,500,000 dollars, which was to be the amount agreed to extend the loan for one additional year. SERFATY LAW is now possession of these monies (5 years later), which are being held in its Trust Account, as of the date of the filing of this Complaint.

24. These funds were sent by way of two separate wire transfers. One transfer came from a US account controlled by SULLIVAN, that was sent on behalf of OCEANFRONT, in the amount of US $250,000 to SERFATY LAW. The second amount was authorized by his attorneys,

5

the Karam & Missick Law Firm in Turks and Caicos to send SULLIVAN's monies, to the SERFATY LAW, in the amount of USD $1,250,000, the total received by SERFATY LAW in the amount of $1,500,000.

25. These funds were the proceeds of the sale of shares owned by SULLIVAN, personally, in a company called Apollo Developments LTD. Soon after sending the funds to SERFAFTY LAW's Trust Account, Ms. Carolina Pochetti, who is a principal of MARBLE HILL, was arrested by the Argentinian authorities and allegations were made that she was not the rightful owner of MARBLE HILL's Funds.

26. In 2018 THE GOVERNMENT OF ARGENTINA accused Carolina Pochetti of acquiring those funds/properties loaned to OCEANFRONT, claiming the funds were the property of Argentina, unlawfully obtained.

27. The monies that Ms. Pochetti, brought into the United States to purchase the real estate in Miami, occurred in 2012-2014 when she brought the funds into the U.S. Some of the funds were used to purchase real estate in Miami, which was later sold to SULLIVAN.

28. At the time that Ms. Pochetti brought the funds into the US, they would have had to clear all AML compliance protocols.

29. SULLIVAN was not involved in this matter at that time, as it was prior to his involvement with the loan from MARBLE HILL. At the time of the 2017 transaction, the properties had long since been purchased by Ms. Pochetti and by all accounts were perfectly legitimate assets situated in the United States.

30. When SULLIVAN liquidated the properties to fund his development company, AML checks were conducted by several law firms, including Greenberg Trauig Law Firm and no irregularities were found.

31. SULLIVAN did not even know Ms. Pochetti or anyone at MARBLE HILL, until months prior to the loan closing in 2017.

32. Due to the allegations made by THE ARGENTINIAN GOVERNMENT against Mrs. Pochetti and her company, MARBLE HILL, and prior claims made to the monies, SERFATY LAW, as the escrow agent, decided to hold the money in Escrow, and not release it back to SULLIVAN, despite SULLIVAN, personally, and on behalf of his company, OCEANFRONT's repeated demand for the return of his monies.

33. As of today's date, SERFATY LAW is still holding the $1.5 million dollars, in its attorney trust account. See letter dated February 6, 2020, from Florida Attorney, Mr. Kevin Tynan, Esquire, on behalf of SERFATY LAW, confirming that it is holding the money, a copy of this letter is attached hereto as Exhibit "A."

34. In the letter, dated February 6, 2020, counsel for SERFATY LAW, states that "originally, we had multiple parties claiming all or part of the funds in question. "It appears that the Argentine government may no longer be asserting a claim, however, we have received no court order or official document from the Argentine government confirming same. In addition to that, there is still a dispute in ownership between your client(s) and Mr. Serfaty's now former client (MARBLE HILL)".

35. As such, the escrow agent, SERFATY LAW, as stated later in the letter, is unable to agree to a reimbursement of the balance of the monies held in trust, back to SULLIVAN.

Moreover, it did confirm that such funds will not be disbursed until such time as there is an overall resolution of the dispute regarding same.

36. SULLIVAN has hired lawyers in Argentina to find out of the ARGENTINIAN GOVERNMENT is making a claim to the monies, asking for a payoff of the MARBLE HILL debt (if indeed the ARGENTINAIN GOVERNMENT is claiming to own the loan), but has gotten no response whether or not the ARGENTINIAN GOVERNMENT is claiming a right to the loan, or even the monies.

37. MARBLE HILL should not be entitled to receive the $1,500,000 from SERFATY LAW (if indeed they are making a claim, which as of right now, despite repeated attempts, SULLIVAN is not able to confirm). SULLIVAN is unable to locate anyone with authority to make representations whether MARBLE HILL is continuing to claim an interest in any monies. SULLIVAN has exhausted all his remedies to attempt to find a resolution, but he and his company, OCEANFRONT, have been stone-walled.

38. Moreover, SULLIVAN should receive back his $1,500,000 payment, as MARBLE HILL breached their obligation to OCEANFRONT, under the material adverse language of their agreement, Section 11 (k) Event of Default. One of the default languages in the Loan Agreement, allowed for the default of the Agreement by either party upon (k) The occurrence of an event that has or had or could reasonably be expected to have a Material Adverse Effect.

39. In this situation, there has been an occurrence of an event that has had or could be reasonably expected to have a Material Adverse Effect, as based on the claims made by the ARGENTINIAN GOVERNMENT on MARBLE HILL, to the monies and potentially the loan, it

8

has prohibited SULLIVAN, and his company from developing the project in TCI.  SULLIVAN is now stuck with a loan.

40. The funds were paid for an extension of the loan, in the amount of $1,500,000, but the extension agreement was never executed, due to the interference of the ARGENTIAN GOVERNMENT.  As such, OCEANFRONT paid the monies for an extension of a loan, and due to that extension never being granted, and the whole deal called into question, the funds should be returned.

41. SULLIVAN is not able to locate the rightful owner of MARBLE HILL, or get the amount owed from MARBLE HILL.  As such, it would make the most logical sense to have the funds returned to SULLIVAN, as the circumstances regarding the loan extension never occurred, as the monies used to pay the loan, were called into question.

42. Instead, the monies are being tied up, with no benefit to anyone, as such it is proper for this Court to make a judicial determination to have the funds released back to the Plaintidds.

43. Therefore, the Plaintiffs now seek, jointly, for this Court to order the return of their, $1,500,000 million dollars, which has been held since 2018 by SERFATY LAW.

44. THE ARGENTINIAN GOVERNMENT appears to not have any issue with the funds being returned to the Plaintiffs.  However, as stated earlier, SERFATY LAW, as escrow agent, requires an order or decree authorizing it to release the funds back to the Plaintiffs.

45. As a result of the funds being held, it has caused significant damage to SULLIVAN, as his development deal completely stalled in TCI, due to the bad press, and accusations, which were against the lender, and not due to any fault of SULLIVAN.

46. SULLIVAN seeks to have the funds returned to him from SERFATY LAW, which are currently held in escrow, so that the funds can be used to get the development approved, and he can repay the loan to MARBLE HILL, in the event MARBLE is still claiming that the loan is still good, which SULLIVAN is unable to confirm.

47. MARBLE HILL has not authorized SERFATY LAW to release the funds, and has been non-responsive on the issue.

48. As such, SERFATY LAW has claimed that there have been previous claims to the monies held in his escrow account by THE ARGENTINIAN GOVERNMENT, with the money being held in escrow since 2018 (five years). This resulted in a taking, under the law, as the Plaintiffs have had a seizure of private property or a substantial deprivation to their free use or enjoyment of their monies, in the amount of $1,500,000, which was caused by government action by THE GOVERNMENT OF ARGENTINA.

49. At the time of the filing of this Complaint, SERFATY LAW, does not believe THE ARGENTINIAN GOVERNMENT is making any claim to the monies, but is refusing to the release the funds back to the Plaintiffs, without a Court Order. As such, there is a need for a judicial determination for the monies to be paid back to the Plaintiffs.

50. SULLIVAN is unaware if MARBLE HILL intends to make a claim now, but it appears from the correspondence from Richardson & Tynan, Plc , that claims have been made to the money, in the past.

51. As such, the Plaintiffs both seek a declaratory judgment, determining that he is entitled to the return of the funds, in the amount of $1,500,000, and that they are the lawful owner of such funds, to use those funds as they deem appropriate.

52. The Court's intervention is necessary, as without the Court becoming involved, the monies held in trust will just remain held, serving absolutely no purpose, and just sitting in a United States Attorney Trust Account.   Moreover, causing the TCI project to remain stalled.

53. The Court can determine whether or not THE ARGENTINIAN GOVERNMENT is still claiming the monies at issue.  If it is not, then they can be dismissed from the suit, and an Order entered confirming that they are not making a claim to the monies.   If they are making a claim to the monies, then the Court can determine, if the claims to the property being held in the U.S. are legitimate, and ultimately the Court can make a determination over the ARGENTINIAN GOVERNMENT'S claims, if any, to SULLIVAN's monies.

54. Moreover, the Court can determine, if MARBLE HILL is still claiming an interest in the monies.  If they are not claiming any interest or right to the monies, then they can be dismissed from the suit, and an Order confirming that they are not claiming any interest in the monies.  If they are making a claim to the monies, then this Court can determine if MABRLE HILL has a legitimate claim to those monies and make a determination as to who should ultimately receive the monies.

55. The point of all of this is for resolution, to finally deal with this large sum of money, which has been tied up, and to eventually, with the assistance of this Court, make a final judicial declaration about who is entitled to the $1,500,000 million dollars.

56. Any and all conditions precedent have been met or other waived.

57. SULLIVAN has been forced to hire the undersigned law firm and is now responsible for their attorney's fees and costs.

### Count I – Declaratory Relief

58. The Plaintiffs aver and reallege the allegations contained Paragraphs 1 through 57, above, and incorporate them in this Count by reference as though fully restated herein.

59. There is a bona fide dispute between the parties of this action, the Plaintiffs, MARBLE HILL, and THE ARGENTINIAN GOVERNMENT, regarding SULLIVAN's rights to the sum of $1.5 million held in trust by SERFATY LAW.

60. SERFATY LAW is a holder of the monies at issue and requires a judicial determination in order to release the monies from its Trust Account.

61. The Plaintiffs make a rightful claim to the funds held by SERFATY LAW. That right may potentially be disputed by THE ARGENTINIAN GOVERNMENT and may be potentially disputed by MARBLE HILL.

62. SULLIVAN and his company, OCEANFRONT, have a justiciable question as to the existence of his right to the funds held in trust.

63. SULLIVAN has exhausted all remedies in order to have a determination made regarding the release of the funds, but due to particular circumstances, and non-responses by the parties, in now forced to seek a judicial declaration.

64. SULLIVAN and his company, OCEANFRONT, have a right to the return of their property in the amount of $1,500,000, which is now held by SERFATY LAW. Whereas The ARGENTINIAN GOVERNMENT and MARBLE HILL may be challenging that right.

65. There is a bona fide, actual, and present need for the declaration as The ARGENTINIAN GOVERNMENT and MARBLE HILL may be making a claim to these monies, which are rightfully the property of the Plaintiffs. As a result, SERFATY LAW has refused to release the funds until all claims to the monies are resolved.

SASSON LAW FIRM
2500 NORTH MILITARY TRAIL SUITE 240
BOCA RATON, FLORIDA 33431
TELEPHONE: (561)246-5085

66. The adverse legal interests of the parties are of sufficient immediacy and materiality to warrant a Declaratory Judgment.

67. The relief sought is not advisory in nature.

68. The Plaintiffs seek a declaration that the Plaintiffs have the right to the monies in the amount of $1.5 million held by SERFATY LAW. Further, that THE ARGENTINIAN GOVERNMENT has no rights to these monies or waives its rights. That MARBLE HILL has no rights to these monies or waives its rights. Lasty, for a declaratory judgment and order to be entered, instructing SERFATY LAW to return the funds to the Plaintiffs, upon receipt of the declaratory judgment and order.

WHEREFORE, the Plaintiffs, SEAN SULLIVAN, and OCEAN FRONT PROPERTIES, LTD, seek a Declaratory Judgment that the Plaintiffs are entitled to the return of the $1.5 million held in trust by the Defendant, SERFATY LAW, PA, and any other relief that this Court may deem just and proper.

.

Date: September 11, 2023

Respectfully Submitted

/s/ Jamie Alan Sasson
Jamie Alan Sasson
Fla Bar #10802
Garrett Kesl
Fla Bar #124756
SASSON LAW FIRM
2500 North Military Trail Suite 240
Boca Raton, Florida 33431
jamie@sassonlawfirm.com
Telephone: 561-246-5085
*Attorneys for the Plaintiff*